## Harper *against* Farmers' and Mechanics' Bank.

In an action of ejectment in which the defendant claims by virtue of a sheriff's sale, and the question being, whether the levy embraced the land in dispute, it is competent for the party to give in evidence the return of survey for an adverse claimant, exhibiting an interference with the land in controversy, the appearance of the parties before the board of property, and their decision, for the purpose of showing that at that time, and before the judgment upon which the sale was made had been obtained, the defendant, as whose property the land was sold, claimed it as his own.

A certificate of the proper officer that " the above is a true copy of the proceeding had in the above case as recorded in minute-book remaining in the office of the Secretary of the Land-Office," &c., is sufficient evidence of its being a true copy of the whole record, unless it appear otherwise from the record itself.

It is the duty of the owners of unseated lands to make a descriptive return of them to the commissioners of the county, for the purpose of taxation; and the omission to do so will subject the owner to the assessment of a four-fold tax upon them, and the land may be sold for its payment. But the owner may elect to consider the land as seated, and return it to the assessor as such, and pay the tax accordingly; and if he does so, his land will not be subject to assessment as unseated, nor to the penalty of a four-fold tax.

ERROR to the Common Pleas of *Cumberland* county.

This was an action of ejectment by The Farmers' and Mechanics' Bank against John Harper and Sarah Miller for a tract of land.

The plaintiff claimed under a warrant to Moses Foulk, dated 24th March 1786, and survey for 424 acres 22 perches, made 20th December 1794, and upon a sheriff's sale to the plaintiff upon a judgment in their favour against George Ege, No. 257, April term 1820, and regularly revived by subsequent writs of *scire facias.* The proceedings were read, &c.

The defendants rested their defence on two grounds. 1st, That the levy upon which the sheriff sold to plaintiff did not embrace the land in dispute. 2dly, That it was regularly sold at treasurer's

[Harper v. Farmers' and Mechanics' Bank.]

sale, and the title vested in John Harper, the defendant, under that sale.

A variety of evidence was given, parol and written, on part of plaintiff, to show that the tract in question was in fact included within the levy; and also on part of the defendants to show that it was not included. A question of ownership of adjoining tracts was involved to ascertain whether the Moses Foulk tract was or was not included. In the progress of plaintiff's testimony on this point, they offered a copy from the records of the board of property in which George Ege and Thomas Thornburgh were plaintiffs, and Samuel White defendant, dated 3d March 1817, for the purpose of showing claim of title to this land in 1817 by George Ege, as follows:

George Ege and Thomas Thornburgh *v.* Samuel White. — 3d March 1817. The board met. Present, all the members. Plaintiffs claimed part of a tract of land surveyed to said White on his warrant of the 8th of September 1814, for land in Cumberland county. The land had been settled and improved by Peter Hartman & Son, who had continued the residence from 1770 till 1806, when it was sold to William Sterner, who in 1808 sold to Samuel White. In 1794, a part of the claim of Hartman had been surveyed on a warrant to Moses Foulk, dated 4th March 1798; and in 1795 another part had been surveyed on a warrant to Thomas Thornburgh, dated 1st October 1792. It did not appear that any objection had been made to these surveys, although they both interfere with what was claimed by the improvement. If the residence had been continued until White obtained his warrant, the board would consider his title as preferable; but as the residence appears to have been discontinued, the board think that this was an abandonment; and although the title under the warrants of Foulk and Thornburgh could not have affected the claim under the settlement had the residence been continued, yet whenever the abandonment took place, they think the right of these warrants took effect; and having taken effect, the resuming the settlement or taking a new warrant afterwards, could not do away the right under these warrants.

The board therefore decide in favour of plaintiffs, and direct a new return to be made on White's warrant, including only what land lies between the surveys of Foulk and Thornburgh.

I do hereby certify that the above is a true copy of the proceeding had in the above case as recorded in minute-book, No. 8, pages 372 and 3, remaining in the office of the Secretary of the Land Office of Pennsylvania.

In testimony whereof I have hereunto set my hand and caused the seal of said office to be affixed at Harrisburg, the 3d day of August, A. D. 1843.

R. M. CRAIN, [SEAL.]
Deputy Secretary of the Land Office.

This was objected to by the defendants, on the grounds that the record offered was imperfect; that the board had no jurisdiction of the subject matter, there being no petition, citation or appearance; that the matter was *ex parte*, and between other parties; that the paper offered is not a full copy, and the certificate is defective.

These objections were overruled by the court and the paper admitted. Exception was taken by defendants.

The plaintiff then offered a certified draft of a tract of land surveyed in the name of Samuel White in 1814. Offered to show the claim of George Ege at that time to the Moses Foulk tract, and the boundary of that tract. The defendants object to the certificate appended, and that it is incompetent testimony to prove the facts contained in the said certificate. The paper was as follows:

A draft of a tract of land situate in Dickinson township, Cumberland county, containing 209 acres and 124 perches, and the usual allowance of 6 per cent. for roads, &c., surveyed 15th July 1815, in pursuance of a warrant granted to Samuel White for 200 acres, bearing date the 8th of September A. D. 1814.

WILLIAM LINE, D. S.

To Richard T. Leech, Esq., S. Gen. Pa.

N. B.—I do certify that at the time of making the above survey there was a family actually residing on the land thereby described; that part of the above survey represented by the blue lines is claimed by George Ege by virtue of a warrant granted to Moses Foulk, dated 4th March 1786; and that part of the above survey represented by the red lines is claimed by Thomas Thornburgh, by virtue of a warrant granted to him, dated 1st October 1792.

WILLIAM LINE, D. S.

In testimony that the above is a copy of the original on file in the Surveyor-General's office, I have hereunto set my hand and the seal of said office, at Harrisburg, this 26th day of July 1843.

JACOB SALLADE, S. G. [SEAL.]

The court overruled the objections and admitted the papers, and the defendants excepted.

A great variety of other testimony was given on both sides, embracing the assessment of taxes, viz: a four-fold tax by the commissioners, treasurer's sale, and commissioner's sale, and conveyance to John Harper, and his possession, and some improvements made by him. A deed from George Ege and wife to S. Miller, dated 30th December 1819, and a power of attorney from S. Miller to George Ege, giving him the control of the property, dated same day, &c. The facts are sufficiently detailed in the points presented and the charge of the court, so as to raise the questions made or decided upon the trial.

The defendant's counsel presented the following points for the opinion of the court to the jury;

1st. If the land in question was not embraced in the *written* levy, whether by mistake or design, the plaintiff cannot in any event recover in this action; that the scope of the written levy cannot be enlarged by any other proof, so as to make it include the land; and that it is a fact to be determined by the jury, whether the land was so embraced in the written levy or not.

2d. That the return of the deputy-surveyor of the land as unseated, the taxation as exhibited in the books of the commissioners, and the sale by the treasurer to the commissioners, and by the commissioners to John M. Woodburn, and by him to John Harper, the defendant, are sufficient in law to vest a regular title to the land in question in the defendant, and in the absence of proof to the contrary, is sufficient to defeat the right of the plaintiff to recover.

3d. That the law required the furnace estate, so far as it *was seated*, to be assessed and taxed as *seated* lands, and the tracts that were *unseated* to be assessed and taxed as *unseated*; and that the presumption of law is, that the taxes on the *seated* and on the *unseated respectively*, were legally assessed and collected; and unless it has been satisfactorily proved on part of the plaintiff, that the taxes assessed on the tract in question were paid, the treasurer and commissioner's sales would be valid, and pass the title to John M. Woodburn the purchaser, no difference who was the owner of the land at the time.

4th. If the land was regularly sold at treasurer's and commissioner's sales, for taxes which accrued from 1806 till 1809, and before George Ege had any interest in, or claim to, the land in question, the omission to have the deeds under which John Harper claims recorded, cannot defeat or in any way injure the title of the said John Harper, and that this is a matter of law binding as well upon the jury as the court.

5th. It lies on the plaintiff to prove that the taxes on the Moses Foulk tract for the years 1806, 7, 8 and 9, were paid, otherwise the treasurer's sale for taxes is presumed to be good, as the plaintiff has only shown that 3900 acres were taxed in Middleton township in which the land was situated, which is some 1200 acres less than the quantity assigned to George Ege as described in the Inquisition, and as attached to the Holly estate. In the absence of any proof of what quantity was in Dickinson township, or where the Dickinson township line ran, the jury cannot on such evidence find that the taxes on the particular tract in question were paid, and there is no other proof of payment in the cause.

6th. If this land was unseated, it was the duty of the owner of the Moses Foulk warrant to furnish to the commissioners of the county a statement, signed by such owner or his agent, contain-

ing a description of the said tract, the name of the person to whom the original title from the Commonwealth passed, and the nature, number, and date of such title. This legal requisition not having been complied with, it became the duty of the county commissioners, when such default was discovered, to assess a four-fold tax on the said tract; and this having been done and a sale made in accordance with the Act of Assembly, such sale was valid, and vested the title in the commissioners; and the assessment of the taxes, &c. on the 3900 acres returned, can have no tendency to invalidate the sale made as above stated, whether the money was paid on such assessment of the 3900 acres or not. See Act of 20th March 1806.

The court below (HEPBURN, President) answered the first and second points in the affirmative, as legal positions, if the jury could believe the facts upon which they were predicated; as to the third point, they thus instructed the jury:

"The law undoubtedly requires that so far as the furnace estate was seated, it should be assessed and taxed as such. But it does not necessarily follow that the woodland connected with iron-works, which are used by an iron-master for cutting wood and coaling upon, and the land used for mining purposes, upon which there is no actual residence or grain raised, should be returned by him as unseated lands. If they are used sufficiently to attach a personal responsibility to the owner for the payment of the taxes assessed upon them, there is certainly no impropriety in returning them, if he chooses to do so, as seated lands, and paying the taxes for them as such. There is nothing in any of the Acts of Assembly to which we have been referred, that says he shall not do so. The 2d section of the Act of 1804 directs that all unseated lands in the Commonwealth shall be valued and assessed for the purpose of raising county rates and levies, 'in the same manner as other property.' And to secure more effectually the return of this kind of property, the Act of 28th March 1806 was passed, imposing a quadruple tax upon all delinquents. But most assuredly, if the owner had returned the same land in a general return of his whole estate, entered upon the seated list, taxed and paid as such, the same land was not again liable to assessment as unseated, for the reason simply that it was found upon the return of the deputy-surveyor of the county. The design was to secure a tax and the payment of it; that accomplished, whether on the seated or unseated list, the law is complied with. And we may also say, for the purposes of this trial, that the presumption of law is, that the taxes on the seated and unseated land respectively were legally assessed and collected. It is true that it devolves on the plaintiff to satisfy you that the taxes upon this land were paid. In the absence of it, the treasurer's and commissioner's sales would be valid, and pass the title to Woodburn irrespective of who was the owner of the land at the time."

4th point. The Supreme Court at an early day had this subject before them, and settled the law upon it in 5 *Bin.* 497—502. I read from the latter page, where the court say : "Although the words of the Act of May 1775 are general, that deeds not record-ed according to the provisions of the Act shall be void against subsequent purchasers without notice, yet these general expres-sions must be construed so as to accomplish the intent of the Act, which was to protect innocent purchasers from suffering by the fraud or neglect of those who had obtained prior conveyances from the *same person*, and omitted to. have them recorded. If un-recorded deeds of this kind were to prevail against subsequent purchasers, no human prudence would be sufficient to guard against imposition, because the title submitted to the examination of the last purchaser, independent of the unrecorded deed, would be perfect. But that is not the case when a man purchases under a title totally unconnected with the first deed. He is entitled to no protection, because he has placed no faith in the title to which the unrecorded deed relates. It would be unjust that one who has purchased under a bad title, should have his estate confirmed by the mere accident of a deed between two persons, with whom he had no privity or connection, being unrecorded. It appears to me clearly that cases of this kind are not within the meaning of the Act," &c. We therefore instruct you as desired on this point.

5th point. It lies on the plaintiffs to prove that the taxes on the Moses Foulk tract for the years 1806, 7, 8 and 9 were paid, other-wise the treasurer's sale for taxes is presumed to be good. And whether they have satisfied you of this fact, you will decide, of course, in view of all the evidence in the cause in reference to it. The other facts in this point are also referred to you, to have such weight with you in determining the case as they merit. You will say, therefore, under all the evidence in this cause, whether these taxes were paid or not, and mould your verdict accordingly.

6th point. If this land was unseated, and was not embraced in the different amount of lands returned by Michael Ege, the then owner, as part of his estate, upon which the taxes had been assessed and paid by him, it was the duty of the owner to furnish to the commissioners of the county a statement as indicated in this point, and it then became the duty of the commissioners to assess a fourfold tax upon it, as was done in the case before us ; and a sale made for this tax in accordance with the Acts of As-sembly would be a valid one, and vest the title in the commis-sioners. But we cannot instruct you that if the 3950 acres, or the lands taxed to Michael Ege within these years in this town-ship, embraced the tract in dispute, and that these taxes, covering the one also upon this tract, with the others, were paid by Mr Ege, that it would not invalidate the sale for taxes by the trea-surer for those years. On the contrary, if this tract of land was

embraced within the lands returned by Mr Ege as part of his estate, upon which the tax had been assessed and paid by him for these same years, it would invalidate the sale, and the defendant would take no title by his purchase.

*Reed* and *Biddle*, for plaintiff in error. The board of property is a tribunal which derives its jurisdiction from statutory enactment, and by its constitution proceedings must originate before it either by *caveat* or citation; but the proceedings offered and given in evidence by the plaintiff had no such origin, but were entirely *ex parte* and extra-judicial. *Act of 8th January* 1791; 3 *Smith's Laws* 2. Nor was the record so certified as to be evidence. 1 *Wash. C. C. Rep.* 330; 3 *Serg. & Rawle* 207; 15 *Serg. & Rawle* 98; 3 *Serg. & Rawle* 34; 6 *Serg. & Rawle* 118. By the Act of the 28th March 1806, it is made the duty of the owners of unseated land to make a descriptive return of them to the commissioners, and the fourfold tax is imposed as a penalty for the omission to comply with the law. It was not the object of the law to secure the payment of taxes, but to insure a faithful and honest return of the land; and it is a matter of no consequence whether the tax was actually paid or not as assessed by the officer; if the law were not complied with, the penalty has been incurred, and the sale under it confers a good title.

*Brandeberg* and *M'Clure*, contra. The two bills of exception as to the admission of the proceedings of the board of property and the survey are but one subject, and were received, not as evidence of title in Ege, but merely to show that he claimed the land as part of the Holly estate at and before the levy. That the certificate was sufficient, they cited 13 *Serg. & Rawle* 135, 334; 2 *Watts* 347; 1 *Watts* 57; 3 *Yates* 290. The owner of unseated lands may return them as seated, and have them assessed and taxed as such, and if the taxes be paid, the object of the law is accomplished, and it would be unjust to sell his lands for the non-payment of a penalty which should never have been imposed. 4 *Watts & Serg.* 133—146; 5 *Watts* 382.

The opinion of the Court was delivered by

ROGERS, J.—This is an ejectment to recover 424 acres 22 perches of land, claimed by the plaintiff on a warrant to Moses Foulk, dated the 4th March 1806, surveyed the 20th December 1794, of which George Ege was the owner. A judgment was obtained against Ege to the April term 1820, on which there was an execution, levy and inquisition on the Mount Holly iron-works, of which the tract in dispute, as the plaintiff alleges, constitutes a part. The property was sold, and plaintiff was the purchaser.

The defence is rested on two grounds:

1. That the levy does not embrace the land in dispute.

2. That it was regularly sold at a treasurer's sale for taxes, and that the title under that sale is vested in the defendant.

To meet the first ground of defence, it was material to prove that before the levy was made by the sheriff, George Ege claimed title to the land covered by the warrant to Moses Foulk; and for that purpose the plaintiff offered in evidence a certified copy of the record of the board of property, in a proceeding in which the said George Ege and Thomas Thornburgh were plaintiffs, and Samuel White was defendant. They also offered in evidence a certified draft of a tract of land surveyed in the name of Samuel White, on a warrant for 200 acres, dated the 8th September 1814. These two pieces of testimony, although offered separately, and not in their proper order, must be considered together as one whole, for they are inseparably connected, and serve to explain each other. The transaction appears to have been thus: William Linn, the deputy-surveyor, surveyed a tract of land on a warrant granted to Samuel White for 200 acres. At the time of the survey, a family was residing on the land. George Ege claimed part of the tract by virtue of the Moses Foulk warrant, and the other part was claimed by Thomas Thornburgh, by virtue of a warrant to himself. These facts the deputy-surveyor, as he was bound to do, (vide *Sergeant Land Law,* 173, and the *Act of 22d January* 1802; 3 *Smith Laws* 480), noted on the survey, and certified the same to the surveyor-general, particularly describing the respective claims by blue and red lines. This was in the nature of a *caveat* against accepting the survey, and prevented the surveyor-general from issuing a patent to White, until the expiration of ten years from the time of the return, without the order of the board of property after hearing the parties. And in pursuance of this, this proceeding, it cannot be doubted, was had. The parties were all present, for George Ege and Thomas Thornburgh, the caveators, were plaintiffs, and Samuel White was defendant; and, after a full hearing, the board decided in favour of the plaintiffs. Taking it altogether, there is not even an imperfection in the record. Undoubtedly the court had jurisdiction; no petition or citation was necessary; the return of the deputy-surveyor being in the nature of a *caveat*, and it manifestly appearing that all the parties in interest were present at the hearing. It is said that the paper offered is not a full copy, and that the certificate is defective; but it does not strike me that it is liable to this objection. It purports to be the whole record, and we cannot intend it to be otherwise, unless something appears in the certificate itself, or on the record, indicating the reverse. We must take it that it embraces all that remains in the office; for even if the record was incomplete, it would be no objection to its admission in evidence. In *Edmiston* v. *Schwartz,* it is ruled that where the prothonotary certified that a paper offered in evidence was truly copied from the records of the Court of Common Pleas of Cumberland county,

it was sufficient evidence that it was a copy of the whole record. So a certificate from the prothonotary that a paper contains a copy of the record, means a copy of the whole record. *Voris* v. *Smith*, (13 *Serg. & Rawle* 334). The deputy-secretary of the Land Office certifies that it is a true copy of the proceeding, as recorded in Minute Book No. 8, pp. 272–3, remaining in the office of the secretary of the Land Office. This we cannot but understand as being a certificate of the whole proceeding of the board of property, recorded in the minute book of the Land Office, the proper and only place of recording such proceedings, according to the usages of the office. We cannot suppose there is any other place or manner of making such entries. Taking, therefore, the two bills of exception together, we think the court was right in admitting the testimony for the purpose for which it was offered.

The remaining objection is to the charge, and this arises on the following state of facts: The land in dispute, the Moses Foulk tract, was part of a body of lands consisting of ten tracts, lying contiguous to each other, held under different warrants, called the Mount Holly estate, or Mount Holly iron-works. The property, as one whole, was returned and assessed by the proper officer of the county as seated lands, for taxes, for the years 1806, 7 and 8; which taxes, as the jury have found, were regularly paid by the owners of the property, under whom the plaintiffs claim. Afterwards, it being discovered that the holder or owner of the tract in dispute had omitted to file a description of the land, as is directed in the Act of the 28th March 1806, and in that particular had failed to comply with the injunctions of the Act, the commissioners, without any notice whatever to the owners, proceeded to assess a fourfold tax, as is therein prescribed. For payment of these taxes, so assessed, the tract in dispute was sold, and the person under whom the defendant claims became the purchaser; and this, it is contended, vests in him a complete and indefeasible title. It has been repeatedly held that proof of payment of the tax avoids the title which a purchaser at a treasurer's sale would otherwise acquire. Unless, therefore, there is something peculiar to this case which makes it an exception, the title of the defendant is defective. And this, it is contended, is the case, because the holder omitted to comply with the injunction of the Act of the 28th March, under which the tract in dispute was sold. It is assumed that this Act, as well as the Act of the 4th April 1805, to which it is a supplement, was intended to apply to the holders of more than one tract, lying contiguous to each other, to avoid fraud, the result of a contrary practice. This may in part be true, but not altogether, as the provisions of the Act apply as well to the owner of one warrant, as to the holder of several warrants lying in one body. The mischief would seem to have been, that the owner of unseated lands frequently withheld his land from taxation altogether; for remedy whereof, it is made his duty,

[Harper v. Farmers' and Mechanics' Bank.]

under the penalty of a fourfold tax, to return it, with a particular description thereof, for taxation, in order that that species of property may contribute in proportion to the current expenses of the county. By the first Act, passed the 4th April 1805, the land is only liable to the imposition of a fourfold tax when *secreted* by the holder, implying by that term that it had been fraudulently concealed from the knowledge of the commissioners. In the Act of the 28th March 1806, which repeals the former Act, the word *secretly* is omitted, from which an inference is deduced that the Legislature intended that the omission, proceed from what cause it may, should be conclusive of the right to impose upon the owner the penalty prescribed by the Act, and that, consequently, proof that the tax had been paid would not affect the title in the hands of the purchasers. But this would not seem to be a legitimate inference, for the only charge which is made is, that under the first Act it would be necessary that it should affirmatively appear that the holder had been guilty of a fraudulent concealment; whereas, under the latter Act, whether it had been omitted by negligence or design, the penalty would be incurred. In either case, the holder being in default, it was thought just that he should suffer the penalty. But although this is so, yet does it apply to a case where there has been neither negligence nor fraud, but a *bonâ fide* payment of the tax assessed on the land, as seated, by the proper officers of the county, where, in truth, as it appears here, there has been the utmost good-faith, and where, if there has been a mistake, it is as much the fault of the assessors as the holders? We think it would be a harsh construction of the Act, if, under such circumstances, the holder should be deprived of his land under a proceeding of which he was ignorant, and when he had a right to believe that he had discharged all the demands of the county against him. The primary intention of the supplement would appear to be, to extend the time for complying with the injunctions of the original Act. That Act required the holders to file their claims within one year from its passage, viz., 4th April 1806; the supplement prolonged the time till the fourth Monday in November following. Where a person is the holder of several tracts contiguous to each other, held under different warrants, there is no doubt that it is his duty to give a description of each and every tract so held, the name of the person or persons to whom the original title from the Commonwealth passed, and the nature, number and date of such original title. And when he omits to comply with this injunction, he renders his unseated land liable to a fourfold tax as a punishment for his neglect. The very fact of such failure renders him obnoxious to the penalty. It is the duty of the commissioners, when such default is discovered, to assess on every such tract four times the amount of the tax to which such tract would otherwise be liable, and to enforce the collection in the same manner that taxes on unseated lands are

[Harper v. Farmers' and Mechanics' Bank.]

assessed and collected. In the case in hand, the land was unseated, the holder neglected to file such a description as is required, it was duly assessed and sold by the commissioners, and Mr Woodburn, under whom the defendant claims, was the purchaser. And, if there was nothing else in the case, it must be conceded the title of the defendant could not be gainsaid. But the plaintiff alleges, and so the jury have found, that the tract in dispute, with other tracts lying contiguous and in one body, were assessed as seated tracts, and that the taxes, this among the number, were duly paid. The only object of the several Acts on this subject is to secure the payment of taxes, and that each species of property, whether seated or unseated, should bear its proper share of the fiscal burthens. Here this object was more than effected, for the county have received, not one, but the amount of five taxes. We will suppose that at the time the commissioners were about to impose the fourfold tax, the holder, Mr Ege, had become aware of their intention, and had represented to them that the same tract had been already assessed as a seated tract, and as such the taxes had been duly paid; would it, notwithstanding this state of facts, have been the duty of those officers to assess and collect four times the amount of the tax to which the tract would have been otherwise liable? The affirmative of this proposition, it seems to me, would be difficult to maintain. The owner, with great propriety and force, could urge, "It is true, I have not returned this as an unseated tract, but the assessors, in pursuance of their duty, have assessed it as a seated tract, by which the county has received more than they otherwise would be entitled to; for seated land is more valuable, and is therefore rated at a higher price than unseated. Of this I have not thought proper to complain, but have paid it regularly as proper officers have assessed it; and now you wish to subject me to a penalty by which the county will pocket five taxes, instead of one." In the case of the holder of one tract, this injustice would be *most* glaring; but the iniquity of it where the owner holds several contiguous tracts, is the same. Here the assessment was of one body, as seated lands, the act of the assessor; in this the owner acquiesces, and I know of no law which will prevent him from consenting that it should be taken as a seated tract, even where it is notoriously otherwise, and liable to taxation as such; for it is to the advantage of the county that it should be so assessed. *Larimer* v. *M'Call*, (4 *Watts & Serg.* 135). It is very true that it is advisable for the holders of several contiguous tracts to comply strictly with the terms of the Act; for, without this precaution, he necessarily exposes himself to great peril, for in many cases it would be very difficult for him to prove payment of the very tax, of which clear proof, it is granted, ought to be required. What renders the case particularly hard is, that the owners of the Mount Holly iron-works paid the taxes, continued to pay them regularly,

[Harper v. Farmers' and Mechanics' Bank.]

and were not aware that the property had been assessed or sold as unseated; for the first notice they had of the defendant's title was at the trial of the indictment against Ege for cutting timber on the land in dispute.

When the owner neglects to pay the tax assessed on his property, he suffers for his neglect, and cannot with any propriety complain; but when he is no defaulter in that respect, and supposes he has discharged all his obligations to the county, he surely has a right to object to the loss of his money and land both. The holder here paid the taxes as they were assessed by the authorized officer; he acquiesces in their being so treated, paid more than could otherwise be demanded; and surely it is not unreasonable to rest under the belief that his land would not be sold, at least without notice of such intention. And certainly we should have some charity for the course pursued by the assessor in assessing it as seated, when it is recollected that there is sometimes great difficulty in distinguishing one species of property from the other, and that it is the duty of the assessor in all cases to treat it as seated rather than unseated. And there is less objection here, where both the owner and the assessor agreed that it fell within that description, and where, in truth, there was some reason to believe it was a seated tract.

Judgment affirmed.